IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIO REALMUTO,                          :

     Plaintiff,                        :

v.                                       :

                            Civil Action No. GLR-14-1386

LIFE INSURANCE COMPANY                   :
OF NORTH AMERICA,
                                         :
     Defendant.

                                         :

## MEMORANDUM OPINION

Pending before the Court is Plaintiff's, Mario Realmuto, Motion for Summary Judgment (ECF No. 32) and Defendant's, Life Insurance Company of North America ("LINA"), Motion for Summary Judgment (ECF No. 34).[1]  The issues have been fully briefed and no hearing is necessary.  See Local Rule 105.6 (D.Md. 2014).  For the reasons given below, Realmuto's Motion for Summary Judgment will be denied and LINA's Motion for Summary Judgment will be granted in part and denied in part.

## I.  BACKGROUND

Beginning in 1988, Realmuto was employed by Arrow Electronics, Inc. ("Arrow") as a staff accountant and was eventually promoted to Financial Systems Manager / Account Finance Manager.  His duties included staff management, providing around-the-clock support to

---

[1] By stipulation approved by the Court on June 4, 2014, Defendants Arrow Electronics, Inc. and Cigna Corporation were voluntarily dismissed pursuant to the parties' agreement that LINA is the only proper party-defendant in the case.  (ECF No. 10).

hundreds of worldwide users, significant travel, and software analysis and support.

Realmuto stopped working in May 2004 as a result of symptoms associated with Charcot-Marie-Tooth ("CMT") disease, Type IA; an inherited progressive neurological condition with no curative treatment, which causes slow weakening progression that starts at the feet and progresses up the body. Realmuto began to exhibit symptoms of CMT in 1974, at age 18. He describes himself as having enjoyed recreational activities through his thirties. By age forty-four, however, he was wearing leg braces and by May 2004, at age forty-eight, progression of the deformity in his feet, the severity of pain, and the likelihood of major surgery made performance of his occupational duties impossible. Realmuto reported difficulty walking, paresthesia, gait disturbance, muscle weakness, pain of the legs and hands, muscle wasting of the legs and hands, altered nerve sensations in the feet and legs, foot deformity, severe fatigue, and limitations of functional capacity and related physical and functional disabilities.

Realmuto was enrolled in Arrow's long-term disability ("LTD") Plan and Group Disability Insurance Policy LK-030291 (collectively, the "Plan"), which was issued and administered by LINA. An employee is entitled to LTD benefits under the Plan if he meets the provided definition of disability. "Disability" is defined as the inability:

to perform all the material duties of his . . . regular
occupation, or solely due to Injury or Sickness, he . . .
is unable to earn more than 80% of his . . . Indexed
Covered Earnings; and after Disability Benefits have been
payable for 24 months, he . . . is unable to perform all
the material duties of any occupation for which he . . .
may reasonably become qualified based on education,
training or experience, or solely due to Injury or
Sickness, he . . . is unable to earn more than 80% of his
. . . Indexed Covered Earnings

(Administrative Record ["A.R."] at Realmuto-592). The Plan
provides that disability benefits terminate, _inter alia_, when the
insured is no longer disabled, (A.R. at Realmuto-599); and requires
continued proof of disability for benefits to continue. (A.R. at
Realmuto-1180). Realmuto was approved for disability benefits under
the Plan beginning on May 31, 2004. (A.R. at Realmuto-01116)
(approval notice for short-term disability); (see also A.R. at
Realmuto-01116) (approval notice for long-term disability).
Realmuto was also approved for disability benefits by the Social
Security Administration ("SSA") under the SSA rules effective May
24, 2004.

Pursuant to the Plan, however, LINA continued to request
updated medical records after its initial claim approval. In 2011,
LINA claims manager, Kim Jackson, noted certain "red flags" in
Realmuto's case file, which promoted her to refer the claim to
"Special Investigations" to monitor and investigate Realmuto's
activities. Between August 9 and August 12, 2011, 108 hours of
surveillance video was taken of Realmuto. The video depicted
Realmuto engaging in various physical activities including pushing

and pulling a lawn mower, trimming the edges of his lawn, using a leaf blower, riding his bike while simultaneously holding his dog's leash, and playing a round of golf.  He performed these activities fluidly, without leg braces, and without signs of any physical limitation or restriction.  Based on the activities captured in the surveillance video and a review of the medical information on file, LINA determined that Realmuto sustained functionality that would allow him to return to, at least, a sedentary occupation.  (A.R. at Realmuto-292-95).  As a result, LINA terminated Realmuto's LTD benefits by letter of September 27, 2011.  (Id.).

Realmuto appealed his benefits termination by letter dated February 12, 2012.  (A.R. at Realmuto-456-64).  He referenced medical reports by Dr. Michael Stanton, Realmuto's treating neurologist; Dr. Michael Foster, Realmuto's primary care physician; Drs. Adolf Flemister and Leon Root, Realmuto's treating orthopedic surgeons; and Dr. Buoye, Realmuto's treating podiatrist, (see id.), as evidence of his disability.  To assist in its review of the appeal, LINA obtained an independent medical opinion by Dr. John Mendez, who is board certified in occupational and internal medicine.  Dr. Mendez concluded that the medical records failed to document any significant measured physical limitations or functional deficits from October 13, 2011 forward.  (A.R. at Realmuto-454-55).  Ultimately, after a thorough review of the claim including Dr. Mendez's report, LINA determined that Realmuto's subjectively reported physical limitations were not supported by

4

the evidence.   Thus, LINA denied Realmuto's first appeal by letter dated May 3, 2012.

On October 29, 2012, Realmuto filed a second appeal.  (A.R. at Realmuto-382-403).  Upon the second appeal, LINA undertook another thorough review of the claim including additional comprehensive diagnostic evaluations, pulmonary function tests, and vocational assessments, submitted by Realmuto to further supplement the medical record.   LINA again referred the matter to a second independent board certified internist, Dr. DeBerry.

Dr. DeBerry conducted a number of peer to peer telephone calls with Realmuto's treating physicians.  (See A.R. at Realmuto-365). Of significance is a conversation with Dr. Michael Stanton, Realmuto's treating neurologist, in which Dr. Stanton indicated that the level of function described in Realmuto's medical chart was not based on objective examination; rather, was based on Realmuto's subjective reporting.  (A.R. at Realmuto-368).  Further, despite CMT being a progressive condition, Dr. Stanton could not specify any measure of difference in Realmuto's condition between the time of his initial treatment and the present.   (Id.). Finally, Dr. Stanton expressed surprise by the level of activity depicted in the surveillance video.   (Id.).   After a thorough review of the record, Dr. DeBerry opined that while the physical limitations and restrictions noted in the medical documentation alone indicate that Realmuto would not be able to function even at a sedentary occupation, the video revealed no presenting physical

limitations or functional deficit that would prevent Realmuto from returning to work. (A.R. at Realmuto-369).

Moreover, as part of its review of the claim and in response to Realmuto's request, LINA also conducted a transferrable skills analysis. (A.R. at Realmuto-355). The analysis considered Realmuto's master's degree in business and historical accounting and managerial positions; and found him to possess mathematical and computer skills, knowledge to design financial record-keeping systems, estimate values, and plan, organize, and direct the work of others. (Id.). Based on these skills, the analysis concluded that Realmuto could perform at least two positions—Manager, Department and Manager, Office—that would meet his Indexed Covered Earnings requirement. (Id.). Based on a complete review of the Administrative Record, on February 14, 2013, LINA again upheld the denial of Realmuto's LTD claim. (A.R. at Realmuto-352).

On April 24, 2014, Realmuto brought this action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (2012), seeking judicial review of LINA's determination that he does not qualify for LTD benefits. On January 30, 2015 and March 2, 2015, the parties moved for summary judgment on the administrative record. The Motions are fully briefed and are ripe for disposition.

1.   **Standard of Review**

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no

genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citation omitted). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(c) requires the nonmoving party to go beyond the pleadings

and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

The parties agree that the Court should review the denial of benefits de novo since the plan does not give the administrator discretionary authority to determine eligibility for benefits. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) ("[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). "The de novo standard of review allows the court to examine all of the evidence in the record and decide whether or not the Plaintiff is totally disabled without giving any deference to the plan administrator's decision to deny or terminate disability benefits." Gluth v. Fed. Home Loan Mortgage Corp. Long-Term Disability Plan, No. 1:11-CV-1126, 2013 WL 246897, at *4 (E.D.Va. Jan. 17, 2013) aff'd, 548 F.App'x 73 (4th Cir. 2013).

**2.   Analysis**

Realmuto contends that the administrative record establishes ample medical evidence demonstrating significant physical

8

impairments that prevent him from performing even sedentary work;
thus, he argues, it is LINA's burden of convincing the Court that
there was a dramatic change in his condition such that it was
justified in terminating his LTD benefits.   Realmuto does not
dispute, however, that the Plan allowed LINA to "require continued
proof of [his] disability for benefits to continue."   (A.R. at
Realmuto-1180).   Further, as a matter of law, LINA's prior award of
benefits does not estop it from later terminating those benefits,
especially where it is presented with new and different evidence
than was before it at the time it initially awarded benefits.
Hensley v. Int'l Bus. Machines Corp., 123 F.App'x 534, 538 (4th
Cir. 2004).   Thus, the issue before the Court is not whether LINA
wrongfully terminated Realmuto's LTD benefits; rather, the issue
before the Court is whether Realmuto was disabled as defined by the
Plan at the time LINA terminated his benefits in 2011.

Contrary to Realmuto's supposition that LINA carries the
burden of convincing the Court that there was a dramatic change in
his condition, it is Realmuto that carries the burden of submitting
enough objectively sufficient evidence that he is currently
disabled as defined by the Plan.   See Horton v. Reliance Standard
Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998) ("A plaintiff
suing under [§ 1132(a)(1)(B)] bears the burden of proving his
entitlement to contractual benefits."); see also Farley v. Benefit
Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir. 1992) (concluding
that because the language at issue was governed by the benefits

section rather than by the exclusions section of the plan it was Plaintiff's burden to show his entitlement to the benefits).

Moreover, because the Plan required continued proof of disability, any dispute over why LINA decided to investigate Realmuto's original claim is not material to determining whether LINA properly terminated his benefits under the Plan. Upon being presented with new and different evidence captured by the surveillance video, it was reasonable for LINA to review the initial claim.

LINA conducted multiple reviews of Realmuto's medical history. Based on the activity depicted in the surveillance video combined with a lack of objectively measured physical limitations noted in the medical history, LINA determined that Realmuto's physical ability was more enhanced than was originally represented. Multiple board certified medical professionals concluded that Realmuto's sustained functionality would allow him to return to a sedentary occupation. Because this meant that Realmuto no longer fit the definition of disabled under the Plan, LINA came to a reasonable decision to terminate Realmuto's LTD disability benefits.

Realmuto asserts that the opinions of his treating physicians should be given due consideration or weight. ERISA does not require, however, that special deference be given to the opinions of treating physicians. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003). Especially considering the lack of

objective functionality testing noted in the administrative record, the surveillance video presents reliable evidence contradicting the opinions of Realmuto's treating physicians.

Nor does the Court owe any deference to findings by the SSA. Elliott v. Sara Lee Corp., 190 F.3d 601, 607 (4th Cir. 1999). Here, SSA's decision to award benefits was made in 2004, prior to LINA's reconsideration of Realmuto's claim in 2011. Moreover, the surveillance video and independent physicians' opinions were not available or considered by SSA in determining Realmuto's eligibility for benefits. Thus, the Court finds no reason to weigh SSA's disability determination any more favorably than the other evidence before it.

Two board certified medical professionals have opined that Realmuto's activity in the surveillance video was inconsistent with his documented medical history and depicted a more enhanced physical ability than was being represented. Further, Realmuto's own treating neurologist indicated that his assessment of Realmuto's condition was not based on objective examination but on subjective reporting and expressed surprise by the level of activity depicted in the surveillance video.

Moreover, as part of its thorough review of the claim, LINA also conducted a transferrable skills analysis. The analysis concluded that Realmuto could perform at least two positions that

would meet his Indexed Covered Earnings requirement.[2]   The positions identified by LINA are mostly sedentary with some opportunity for mobility throughout the day.   Both Realmuto and his doctors indicated that some movement and exercise would be helpful to his condition.   Thus, the limited mobility required by a sedentary position may actually serve to improve his condition or delay its progression.

On balance, after extensive review of the undisputed administrative record, including the surveillance video, the Court finds that the record does not support the subjectively reported severity of Realmuto's condition and the resulting physical limitations and restrictions.   The Court finds that the undisputed Administrative Record supports the conclusion that he is able to perform the material duties of at least two occupations that would meet his Indexed Covered Earnings requirement and for which he is reasonably qualified.   Realmuto cannot, therefore, as a matter of law, meet his burden of establishing an entitlement to additional LTD benefits because he does not meet the provided definition of disability under the Plan.   Accordingly, LINA's Motion for Summary Judgment will be granted in part.   Upon consideration of LINA request for attorneys' fees and costs, the request will be denied.

---

[2] Although he argues the merits of that analysis, Realmuto has failed to submit any evidence disputing the results.

**III. CONCLUSION**

For the foregoing reasons, this Court will, by separate Order, DENY Realmuto's Motion for Summary Judgment (ECF No. 32) and GRANT in part and DENY in part LINA's Motion for Summary Judgment (ECF No. 34).

Entered this 24th day of July, 2015

/s/
_____
George L. Russell, III
United States District Judge